UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE


Dmitrii Belonogov

    v.

FCI Berlin, Warden, et al.

Civil No. 25-cv-388-SE-TSM
Opinion No. 2026 DNH 044


O R D E R


Dmitrii Belonogov is a native and citizen of Russia subject to a final order of removal

and currently detained at Federal Correctional Institution, Berlin (FCI Berlin). Appearing pro se,

he petitions this court under 28 U.S.C. § 2241 for an order releasing him "under any conditions

of supervise[d] release so [he] can reunite with [his] family until any deportation is possible."

Doc. no. 1 at 3. The respondents oppose the petition and argue that the government is lawfully

detaining Belonogov for the purpose of effectuating his removal. Because the respondents have

failed to rebut Belonogov's showing of good reason to believe that his removal is not

significantly likely in the reasonably foreseeable future, the court grants the petition.


Background[1]

Belonogov first arrived in the United States in 1993 as a refugee from Russia and was

admitted as a lawful permanent resident. In 2001, an immigration judge (IJ) ordered him

---

[1] The following facts are drawn from Belonogov's verified petition, doc. no. 1, the respondents' response in opposition to the petition, doc. no. 8, and the documents filed by the respondents in response to the court's order to provide "any documentation surrounding the petitioner's prior release and re-detention," doc. nos. 17-1, 17-2, 17-3.

removed based on his criminal history in Massachusetts. The government did not effectuate that order of removal until 2012 because the Russian government refused to furnish Belonogov's travel documents.

On March 25, 2022, a decade after he was removed, Belonogov and his family "fled Russia because [he] was illegally detained by [Russia's Federal Security Service] and later drafted to fight [the] illegal war in Ukraine." Doc. no. 1 at 1. On May 3, 2022, Belonogov applied for admission to the United States at the San Ysidro, California port of entry. On May 4, 2022, U.S. Customs and Border Protection paroled Belonogov into the United States pursuant to an order of release on recognizance, which was set to expire a year later, on May 2, 2023. While released in 2023, Belonogov filed an application for asylum with the assistance of counsel. That same year, Belonogov requested his passport from the Russian embassy, but the embassy rejected his request.

On February 14, 2025, Immigration and Customs Enforcement (ICE) detained Belonogov at a routine appointment at its office in Burlington, Massachusetts. ICE issued him a Notice of Custody Determination saying that he would be detained pending a final determination in his case pursuant to 8 U.S.C. § 1226. Belonogov requested a hearing in Immigration Court based on his fear of harm if returned to Russia.

On July 25, 2025, an IJ denied Belonogov's asylum application. Belonogov was detained and representing himself at this point. Though he reserved appeal of the decision, he did not ultimately appeal the IJ's denial to the Board of Immigration Appeals. As a result, the IJ's order of removal became administratively final on August 25, 2025. See 8 C.F.R. § 1241.1(c). On that date, the statutory authority for Belonogov's detention shifted from 8 U.S.C. § 1226 to 8 U.S.C. § 1231.

Belonogov filed his petition in this court on October 8, 2025, seeking release from detention. Doc. no. 1. He argued that he "should have the chance to take [his] wife and child and go seek asylum in another country," and that he will be "detained and prosecuted if [he] [goes] back to Russia." Id. at 2–4. He further alleged that he is not a flight risk or a danger to the community, and that he has "held two jobs and paid taxes." Id. at 3. In a September 26, 2025 letter, he alleged that he had "been trying to file his petition since May 26, 2025" and believed that his mail was being held by someone at FCI Berlin. Doc. no. 1-3 at 1.

On November 7, 2025, the respondents filed their opposition to the petition in which they argued primarily that they were statutorily required to detain Belonogov during his 90-day removal period, would provide him with a custody review pursuant to 8 C.F.R. § 241.4, and were actively working to secure travel documents on his behalf. Doc. no. 8. The respondents "began efforts to initiate [Belonogov's] removal" when his order of removal became final. Doc. no. 8-1 at 4. Because his Russian passport had expired, "ICE made efforts to secure a valid travel document to effectuate [Belonogov's] removal," first on October 7, 2025, and twice more during the ensuing month. Id. The pursuit remained "active and ongoing" as of the filing of the respondents' opposition. Doc. no. 8 at 6.

On March 12, 2026, the court ordered the respondents to provide "any documentation surrounding the petitioner's prior release and re-detention" as well as a "status update regarding any efforts to obtain a travel document for the petitioner." On March 20, 2026, the respondents furnished three responsive documents: (1) a March 20, 2026 declaration of Acting Assistant Field Office Director Brian E. Sullivan; (2) a May 5, 2022 Notice of Custody Determination; and (3) a July 25, 2025 order of removal. Doc. nos. 17-1, 17-2, 17-3.

3

The Sullivan declaration states that ICE submitted a request to the Russian Consulate for Belonogov's travel documents on December 23, 2025, and the most recent development occurred on March 17, 2026, when the Russian Consulate advised that the request "remains under review for citizenship verification." Doc. no. 17-1 at 3. Sullivan further declares that "the timeline for completion of the citizenship verification process varies for each case," and that "ICE expects that the travel document will be issued in [Belonogov's] case." Id. Sullivan attests that ICE removed 1,273 Russian nationals in Fiscal Year 2025.

Sullivan further declares that, parallel to ICE's attempts to secure Belonogov's travel documents, on October 10, 2025, ICE served Belonogov notice that it would conduct a 90-day review of his custody status the following month. On November 24, 2025, ICE served him with a Decision to Continue Detention, at which time Belonogov requested a personal interview regarding his custody status. On January 22, 2026, ICE served Belonogov notice that his personal interview was scheduled for February 4, 2026. The interview occurred on February 12, 2026, and, that same day, ICE issued a recommendation to continue detention as part of its 180-day review process.

In response to the respondents' March 20, 2026 filing, Belonogov argues that they have failed to meet their burden of showing that his removal is significantly likely in the reasonably foreseeable future. He points out that "no travel documents have been issued to this day" and there "is no evidence when[,] if ever, travel documents will be issued." Doc. no. 19. Belonogov remains detained at FCI Berlin as of the date of this order.

Legal Framework

By statute, the government must remove a noncitizen during the "removal period," which begins upon the entry of a final order of removal and lasts 90 days. § 1231(a)(1). Detention is mandatory during the removal period. § 1231(a)(2). If the government is unable to remove a noncitizen before the removal period expires, it may release the noncitizen under an order of supervision pursuant to § 1231(a)(3) or continue to detain him under § 1231(a)(6). Continued detention under § 1231(a)(6) is permissible only for noncitizens who are: (1) inadmissible pursuant to 8 U.S.C. § 1182; (2) subject to certain grounds for removability in 8 U.S.C. § 1227; or (3) determined to be a risk to the community or unlikely to comply with the order of removal.

Even when permissible, detention beyond the removal period under § 1231(a)(6) is limited. In Zadvydas v. Davis, the Supreme Court recognized that "[a] statute permitting indefinite detention of [a noncitizen] would raise a serious constitutional problem." 533 U.S. 678, 690 (2001). Though the statute does not explicitly limit the length of time the government can detain a noncitizen after the removal period expires, the Court "has 'read an implicit limitation' into the statute 'in light of the Constitution's demands,'" and has limited detention to "'a period reasonably necessary to bring about that [noncitizen's] removal from the United States.'" Johnson v. Guzman Chavez, 594 U.S. 523, 529 (2021) (quoting Zadvydas, 533 U.S. at 689).

The Zadvydas Court held that six months is presumptively "reasonably necessary to bring about the [noncitizen's] removal from the United States." Johnson, 594 U.S. at 529 (citing Zadvydas, 533 U.S. at 701). If the government has detained a noncitizen for more than six months, and the noncitizen "'provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future,' the Government must either rebut

that showing or release the [noncitizen]." Id. (citing Zadvydas, 533 U.S. at 701). "[A]s the period

of prior postremoval confinement grows," the Court noted, "what counts as the 'reasonably

foreseeable future' conversely would have to shrink." Zadvydas, 533 U.S. at 701.

Analysis

Belonogov alleges that his detention is unlawful and unconstitutional because: (1) he has

not violated any immigration order or criminal law since his reentry in 2022; (2) he was paroled

into the United States and never violated any conditions of his release; and (3) it is presently not

possible to secure his removal because the Russian government refuses to furnish his travel

documents. The respondents counter that Belonogov's detention "is authorized by statute and

regulation and does not offend the Constitution." Doc. no. 8 at 8. Belonogov has offered good

reasons to believe that there is no significant likelihood that he will be removed in the reasonably

foreseeable future. The respondents have failed to rebut those good reasons. Because Belonogov

prevails on his third argument and it affords him complete relief, the court need not address his

other arguments at this time.

Belonogov's removal order became final, initiating the 90-day removal period, on August

25, 2025. When the respondents filed their opposition, Belonogov was still within the statutory

90-day removal period, during which detention is mandatory. See § 1231(a)(2). Now, however,

the respondents' argument that Belonogov's detention is presumptively reasonable and

mandatory under § 1231(a)(2) fails at the threshold. The removal period has long since passed,

and Belonogov has been detained under § 1231(a)(6) beyond the presumptively reasonable

period contemplated in Zadvydas.[2] Because his post-removal-order detention has continued beyond those six months and the presumption of reasonableness no longer attaches, the court must consider whether "removal is no longer reasonably foreseeable." Zadvydas, 533 U.S. at 699. If it is not, "continued detention is no longer authorized by statute." Id.

As such, Belonogov's habeas petition—which the court must consider as of today—requires the court to determine whether he has shown "good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future," and whether the government has put forth evidence to rebut that showing. Zadvydas, 533 U.S. at 701. The court now turns to that analysis.

Beginning with a petitioner's initial showing, "Zadvydas imposes a minimal burden . . . to produce good reason to believe removal is not reasonably foreseeable." Dupont, 2026 WL 74112, at *4. Courts have ruled that the government's lack of progress in securing a noncitizen's repatriation over the course of his detention, coupled with the passage of time, is sufficient to meet a petitioner's initial burden. Id. The petitioner need not establish that removal is not reasonably foreseeable, but rather need only provide good reason to believe that removal is not significantly likely in the reasonably foreseeable future. Siguenza v. Moniz, No. 25-CV-11914-ADB, 2025 WL 2734704, at * 3 (D. Mass. Sep. 25, 2025) (citing Mary Holper, The Beast of Burden in Immigration Bond Hearings, 67 Case W. Rsrv. L. Rev. 75, 104–05 (2016) (noting that

---

[2] The court will assume that Belonogov's Zadvydas period expired on February 25, 2026, six months after his removal order became administratively final. The respondents have not argued that "the six-month Zadvydas period begins after the removal period expires (i.e., ninety days + six months)." See Dupont v. Meserve, No. 2:25-CV-00593-JAW, 2026 WL 74112, at *3 n.3 (D. Me. Jan. 9, 2026) (describing two plausible readings of Zadvydas); see also Phommachak v. Wesling, No. CV 25-13894-BEM, 2026 WL 157491, at *5 (D. Mass. Jan. 20, 2026) (collecting cases).

Zadvydas "appears to place the burden of production on the detainee, but the ultimate burden of persuasion on the government") (further citations omitted)).

ICE has avowedly worked diligently to obtain Belonogov's travel documents, but its efforts have been stagnant for months. It "began efforts to initiate [Belonogov's] removal" on August 25, 2025, when his removal order became administratively final, but soon learned that his Russian passport had expired. Doc. no. 8-1 at 4. Then, on three occasions in October 2025, ICE "made efforts to secure a valid travel document to effectuate [Belonogov's] removal." Id. On December 23, 2025, ICE submitted a request to the Russian Consulate in New York City. As of March 17, 2026, however, ICE's request for travel documents remained under review for citizenship verification with the Russian Consulate. In other words, submitting an unfulfilled request was the respondents' only progress made toward obtaining Belonogov's travel documents between August 2025 and March 2026.

The respondents' present lack of success is unsurprising given that the Russian government denied Belonogov's own request to obtain his passport in 2023. The current delay is also thus far consistent with the difficulty the United States faced during its efforts to remove Belonogov pursuant to his 2001 removal order, which took more than ten years, until 2012. Though the respondents do not explain the prior delay, Belonogov states that it occurred "because the Russian [g]overnment refused to provide [him] with travel documents." Doc. no. 1 at 1. The respondents have supplied no reason to believe that the Russian government will be more forthcoming this time around.

To be sure, a noncitizen's prolonged detention may not be unreasonable if the barrier to removal is his own pending application for relief from removal. In G.P. v. Garland, the court held that a noncitizen who was detained during the pendency of his withholding-only

8

proceedings was unlike the petitioners in Zadvydas because if he was ultimately denied relief, "the government [would] be able to move forward with removing him." 103 F.4th 898, 900–02 (1st Cir. 2024). In Zadvydas, by contrast, the petitioners were in "removable-but-unremovable limbo" because they "had exhausted administrative and judicial remedies to prevent removal and were being detained only because the government was struggling to find a country to take them in." Id. at 901 (citing Zadvydas, 533 U.S. at 683–86).

Here, Belonogov is in "removable-but-unremovable limbo." He is not detained due to a pending request for relief from removal; rather, he is legally removable but practically unremovable without valid travel documents. Given that ongoing negotiations with a foreign nation currently prevent Belonogov's removal, that the respondents have made no apparent progress in those negotiations over the past six months, and that similar negotiations with the same foreign nation lasted over ten years the last time the United States removed Belonogov, the court concludes that he has "provide[d] good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future." See Zadvydas, 533 U.S. at 701.

Because Belonogov has met his initial burden, the respondents must respond with evidence "sufficient to rebut" his showing. Zadvydas, 533 U.S. at 701. Generalized assertions about ongoing removal efforts are insufficient to justify continued detention. See Dupont, 2026 WL 74112, at *4 (reasoning that the respondents' "plain assertions that the agency is 'working on it' without providing any material information demonstrating removal is likely in the near future" were insufficient).

Here, the respondents have asserted that a request for Belonogov's travel documents has been under review by the Russian Consulate for nearly four months, that "ICE expects that the travel document will be issued in Petitioner's case," and that ICE removed 1,273 Russian

9

nationals in Fiscal Year 2025. Doc. no. 17-1 at 3. This evidence is insufficient to rebut Belonogov's showing. The respondents have provided no evidence of any meaningful progress in their negotiations with Russian authorities regarding Belonogov's travel documents. They explicitly acknowledge that the "timeline for completion of the citizenship verification process varies for each case," but assert only that travel documents will be issued and not that they will be issued in the reasonably foreseeable future. Id. "Where there is a lack of evidentiary support in the record as to how long a travel document could take to issue, courts have been hesitant to find that imminent issuance of the document is reasonably foreseeable." Ambila v. Joyce, No. 2:25-CV-00267-SDN, 2026 WL 184751, at *3 (D. Me. Jan. 24, 2026). The court acknowledges that it must "listen with care when the Government's foreign policy judgments, including, for example, the status of repatriation negotiations, are at issue, and . . . grant the Government appropriate leeway when its judgments rest upon foreign policy expertise." Zadvydas, 533 U.S. at 700. But on the record before the court, the respondents have not taken any position on when they will acquire Belonogov's travel documents or even whether his removal is broadly reasonably foreseeable.

Nor does the respondents' evidence that ICE removed 1,273 Russian nationals in Fiscal Year 2025 rebut Belonogov's showing that there is good reason to believe that there is no significant likelihood of his removal in the reasonably foreseeable future. The respondents provide no context whatsoever with respect to their evidence regarding removals to Russia. They do not provide the total number of Russian nationals they sought to repatriate, how many possessed passports or other travel documents, how many needed Russia to provide travel documents through negotiations with the United States, how many had criminal histories, or how many had fled Russia after being drafted into the war in Ukraine. Without at least some of this

information, the total number of Russian nationals removed in a previous year sheds no light on the likelihood of Belonogov's removal.

In sum, Belonogov has carried his minimal burden, and the respondents' evidence to the contrary fails to rebut his showing. Consequently, the court cannot conclude that Belonogov's removal is reasonably foreseeable. His detention under § 1231 has thus become untethered to "the statute's basic purpose, namely, assuring the [noncitizen's] presence at the moment of removal." See Zadvydas, 533 U.S. at 699–700. Belonogov's continued detention is therefore unreasonable and he must be released. See Johnson, 594 U.S. at 529 (stating that under Zadvydas, the government must either rebut the noncitizen's showing or release the noncitizen).

<u>Conclusion</u>

For the foregoing reasons, the petition for writ of habeas corpus is granted. The respondents are ordered to release Belonogov immediately, subject to an order of supervision pursuant to § 1231(a)(3). The court leaves the conditions of release to the respondents' discretion.

SO ORDERED.

_____
Samantha D. Elliott
United States District Judge

April 22, 2026

cc:    Counsel of record.